**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHARLES MATHIS,
    Petitioner,               Civil No. 2:09-CV-11265
                                  HONORABLE GEORGE CARAM STEEH
v.                        UNITED STATES DISTRICT JUDGE

CAROL HOWES,

    Respondent,
_____/

<u>**OPINION AND ORDER DENYING PETITION**</u>
<u>**FOR WRIT OF HABEAS CORPUS**</u>

Charles Mathis, ("petitioner"), presently confined at the Mid-Michigan

Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner

challenges his conviction for two counts of felonious assault, M.C.L.A. 750.82;

one count of felon in possession a firearm, M.C.L.A. 750.224f; one count of

carrying a concealed weapon, M.C.L.A. 750.227; one count of possession of a

firearm during the commission of a felony, M.C.L.A. 750.227b; and being a

fourth-offense habitual offender, M.C.L.A. 769.12.  For the reasons stated below,

petitioner's application for writ of habeas corpus is **DENIED**.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the

Wayne County Circuit Court. [1]

Maria Sanders worked the closing shift at a Burger King restaurant in Highland Park, Michigan on September 8, 2006.  When Sanders left the restaurant at 2:00 a.m., she called her friend, Steven Babb, to come assist her after discovering that her car would not start.  Mr. Babb arrived in his own car and Ms. Sanders sat in the passenger seat of Mr. Babb's car to stay warm.  A man selling music CDs walked up to the driver's side of the car and began speaking with Mr. Babb.  A woman whom Ms. Sanders later identified as Mercedes Smoot drove into the gas station with petitioner sitting in the passenger seat.  The two got out of the car and walked toward a gas station which was located next to the Burger King.  While walking towards the gas station, petitioner told the man selling the CDs to pull up his pants and "respect his young lady."  Petitioner and Ms. Smoot left the gas station, pumped gas into the car, and then left.  Sanders testified that she watched petitioner more closely after he exited the gas station because of his previous comments to the man who had been selling the CDs. Ms. Sanders and Mr. Babb continued selecting CDs.

Petitioner and Ms. Smoot returned to the gas station five minutes later. Petitioner got of the car holding a shiny black gun.  Petitioner ordered everyone to drop the CDs.  When Ms. Sanders attempted to comply, petitioner told her to close the door or she would be shot.  Petitioner demanded their money, but

---

[1]  Petitioner was acquitted of two counts of assault with intent to rob while armed.

Sanders and Babb only had change.  Petitioner refused their money and ordered

Smoot to "pull off" and drive away from the area, but she failed to do so.

Petitioner then said "bitch, I said pull off," at which point Ms. Smoot drove away

from the scene.  Petitioner left the gas station on foot and walked down Beresford

Street.  Mr. Babb and Ms. Sanders drove to a police mini-station to report the

crime, but it was closed.  When they returned to the gas station, the Wayne

County Sheriff's Department was on the scene.  The officers informed Babb and

Sanders that they had just picked up a suspect that fit Ms. Sanders' description of

their assailant.  Sanders was taken down the street to confirm his identity.

Petitioner was the only person sitting in the back seat of a police vehicle.  Ms.

Sanders positively identified petitioner at the scene and later at trial.

  Steven Babb's testimony was similar to Ms. Sanders, except that he

testified that the area around Burger King restaurant and the adjoining gas station

was well-lit.  Babb testified to seeing petitioner and Ms. Smoot drive up in a blue

car.  Babb testified that on the way into the gas station, petitioner told the man

who was selling the CDs to pull up his pants and respect his lady.  Babb testified

that he got a good look at petitioner as he was walking toward the gas station.

Babb testified that petitioner exchanged more angry words with the man selling

the CDs upon leaving the store.  Babb testified that petitioner and Ms. Smoot

returned five minutes later in a black car with Ms. Smoot driving.  Babb testified

that petitioner exited the car with a gun in his hand.  Petitioner then said "talk that

shit now," closed the door, and walked toward the group. The man selling the CDs went behind Mr. Babb's car and ran away, leaving Babb and Sanders behind. Petitioner stuck the gun in their faces and demanded money. When Babb offered the change in his console, petitioner said that was not enough and ordered Babb to drop the CDs. Petitioner then pointed the gun in Babb's face. Petitioner told Ms. Smoot to leave and walked away behind the gas station.

Babb subsequently described their assailant to police officers, who told Babb they had someone in custody. Babb was taken over to a police car, where petitioner was sitting and positively identified him as their assailant. Babb also positively identified petitioner at trial as the person who tried to rob him.

Deputy Phillip Migliaccio testified that a gas station attendant informed him that a black male with a bald head, white t-shirt and black gun ran east down Beresford Street after the incident. Deputy Migliaccio headed down Beresford Street and observed a black male in a white t-shirt standing on a nearby corner. Deputy Migliaccio ordered the man to the front of his car at gunpoint. Officers eventually arrested the man, later identified at trial as petitioner. Shortly thereafter, a black Chevy Impala being driven by Ms. Smoot drove by. Petitioner told the officers that this was his car. The black Chevy Impala was registered to a Melanie Mathis. Officers searched the area but were unable to find a gun.

Three days after the incident, a citizen living at 79 Beresford Street in Highland Park, which was about one block away from the Burger King and the

4

gas station, turned a loaded gun in to the police.  The gun was an automatic nine millimeter Baretta.

Petitioner presented several defense witnesses.  Daryl Sawyer had gone with petitioner to a nightclub on the evening of September 7th and early hours of September 8th, before driving back to Sawyer's house.  Petitioner ran out of gas, so Jackeline Harrington took him to a gas station.

Jaekeline Harrington confirmed that she drove petitioner to the gas station at Mr. Sawyer's request.  She and petitioner walked toward the station and purchased gas, cigarettes, and a soda.  Harrington testified that petitioner argued with the gas station attendant about the cost of his purchase, but did she did not observe petitioner exchange words with anyone else.

Mercedes Smoot had been charged as a co-defendant in this case.  The trial court directed a verdict of acquittal for Smoot.  Smoot subsequently testified as a defense witness.  Smoot testified that she drove petitioner to the gas station in order to get fuel for his car.  A man approached petitioner and the two of them exchanged words.  Smoot remained in the car.  The man eventually ran away, and petitioner told her to leave.  Ms. Smoot returned to the area, saw police cars, and was ultimately detained.   Smoot never saw petitioner with a gun.

Petitioner testified that when he and Ms. Smoot arrived at the gas station, a man approached him and tried to sell him CDs.  Petitioner and this man got into an argument.  Petitioner claimed that this man tried to grab his diamond watch.

5

Petitioner tried to punch the man, but barely touched him. The man ran toward the passenger's side of Mr. Babb's car and petitioner saw someone open the door. Although it appeared to petitioner that Sanders, Babb, and this man were together, the man ultimately ran away down Beresford Street. Petitioner told Ms. Smoot to drive away so that no one would steal his car. Babb pulled off from the scene and petitioner started walking down the street. Petitioner noticed sheriff's deputies and waved his hands to get their attention, in order to tell the officers that somebody had just tried to rob him. One officer drew his gun and arrested petitioner, eventually searching him. After petitioner's arrest, the police took his watch, ring, and forty dollars from his pocket. On cross-examination, petitioner acknowledged being previously convicted of a crime involving theft or dishonesty.

The parties stipulated that petitioner had been previously convicted of a felony and was ineligible to possess a weapon at the time of the incident.

Petitioner's conviction was affirmed on appeal. *People v. Mathis,* No. 275655(Mich.Ct.App. May 22, 2008); *lv. den.* 482 Mich. 1018; 759 N.W. 2d 357 (2008)(Kelly, J. would grant leave to appeal).

Petitioner now seeks habeas relief on the following grounds:

I. The trial court deprived petitioner of his right to a properly instructed jury where it gave an accomplice instruction even though the witness had been acquitted of playing any role in the crime and testified as a defense witness.

II. Petitioner is entitled to a new trial where he was denied his state and federal constitutional right to due process and the effective assistance

6

of counsel where counsel failed to move to suppress an identification made on the scene with petitioner seated, handcuffed, in the back of a police vehicle after the identification witnesses had been informed that police [had detained] a suspect fitting the witness' description.

III.  Petitioner was deprived of his right to due process and fair trial provided by the 6th and 14th Amendments and Art. I, § 17 and 20, Const 1963, where the trial court abused its discretion and admitted a weapon into evidence which was unrelated to the crimes and there was no connection to petitioner.

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme

7

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

### A.  The motion to amend the petition.

Petitioner has filed a motion to amend his petition for writ of habeas

corpus. [Dkt. # 5].

The decision to grant or deny a motion to amend a habeas petition is

within the discretion of the district court. *Clemmons v. Delo*, 177 F.3d 680, 686

(8th Cir. 1999); *citing to* Fed.R.Civ.P. Rule 15.  Notice and substantial prejudice

to the opposing party are the critical factors in determining whether an

amendment to a habeas petition should be granted. *Coe v. Bell*, 161 F.3d 320,

341-42 (6th Cir. 1998).  Delay by itself is not sufficient to deny a motion to

amend. *Id.*

Petitioner's proposed amended habeas petition alleges additional support

for the claims that he raised in his original petition, was not the subject of undue

delay, and would not unduly prejudice respondent.  Accordingly, the motion to

amend should be granted. *See Riley v. Taylor*, 62 F.3d 86, 92 (3rd Cir. 1995).

Additionally, the motion to amend will be granted, because petitioner has filed

this motion to amend the petition before the court has adjudicated the issues in

8

the petition. *See Stewart v. Angelone*, 186 F.R.D. 342, 343 (E.D. Va. 1999).

### B. Claim # 1.  The accomplice instruction claim.

Petitioner first contends that the trial court erred when it gave a cautionary accomplice instruction concerning petitioner's own witness, Mercedes Smoot. Petitioner claims that such an instruction was erroneous, in light of the fact that Smoot testified for the defense after the trial court had directed a verdict of acquittal for her. [2]

In order for habeas relief to be warranted on the basis of incorrect jury instructions given in a criminal trial in state court, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

There is no constitutional problem to instruct a jury to receive an accomplice's testimony "with care and caution." *Cool v. United States,* 409 U.S. 100, 103 (1972).  In addition, a number of circuits have held that it there is no

---

[2]   The Court notes that respondent failed to address this issue in her answer.  Petitioner, however, is not entitled to habeas relief because of respondent's failure to respond to this issue, because to do so "would be tantamount" to granting a default judgment to petitioner in this case, which is a form of relief unavailable in habeas proceedings. *Alder v. Burt,* 240 F. Supp. 2d 651, 677 (E.D. Mich. 2003)(citing to *Allen v. Perini*, 424 F. 2d 134, 138 (6th Cir. 1970)); *See also Gordon v. Duran,* 895 F. 2d 610, 612 (9th Cir. 1990)(failure of state to respond to five of eight claims raised in habeas petition did not entitle habeas petitioner to default judgment on those claims).  In addition, respondent's failure to address this issue may have been due to the fact that petitioner did not clearly delineate this claim in his initial petition for writ of habeas corpus, even though he did attach to his original petition for writ of habeas corpus his state court appeal brief, in which this claim was raised.

9

error in giving an accomplice witness instruction when the accomplice's testimony favors the defendant. *See U.S. v. Tirouda*, 394 F. 3d 683, 687 (9th Cir. 2005)*; United States v. Bolin*, 35 F.3d 306, 308 (7th Cir. 1994); *United States v. Urdiales*, 523 F.2d 1245, 1248 (5th Cir. 1975). Courts have also denied habeas relief on claims that a state trial court erred in giving a cautionary instruction on accomplice testimony involving a witness for the defense. *See Ky Minh Pham v. Hickman,* 262 Fed.Appx. 35, 38-39 (9th Cir. 2007)*; Morton v. Warren,* No. 2008 WL 4386840, * 10 (E.D. Mich. September 24, 2008). Petitioner is not entitled to habeas relief on his first claim.

### C. Claims # 2 and # 3. The ineffective assistance of counsel claims.

The Court will consolidate petitioner's second and third claims together for judicial clarity.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

10

With respect to the performance prong, a habeas petitioner must identify those acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance on the part of counsel. *See Gardner v. Kapture*, 261 F. Supp. 2d 793, 803-04 (E.D. Mich. 2003)(*quoting Strickland,* 466 U.S. at 690).  A reviewing court's scrutiny of counsel's performance is highly deferential. *Strickland,* 466 U.S. at 689.  Counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a habeas petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gardner,* 261 F. Supp. 2d at 804 (*quoting Strickland,* 466 U.S. at 694).  A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

Petitioner first claims that his counsel was ineffective for failing to move to suppress the on-scene identifications made by Babb and Sanders.

The Michigan Court of Appeals rejected petitioner's claim, concluding that counsel was not ineffective for failing to move for suppression of Babb's and Sanders's identifications of petitioner, because the on-scene identifications were not an impermissibly suggestive procedure leading to a substantial likelihood of misidentification:

11

Considering the totality of the circumstances, Babb's and Sanders's on-scene identifications of defendant were not based on an impermissibly suggestive procedure leading to a substantial likelihood of misidentification.  First, Babb and Sanders observed both of defendant's trips to the gas station.  The gas station was well-lit, so when he passed Babb's car they could see his face clearly.  Furthermore, their attention was drawn to defendant on his first trip because he spoke angrily to a man selling compact discs.  On defendant's second trip, defendant exited a car thirty feet from Babb's car, held a gun, and said, "talk that s-t now."  Then, defendant approached Babb's car, held the gun three inches from Babb's head, and demanded money.  Thus, Babb and Sanders had adequate an opportunity to view defendant at the time the crime occurred.  Second, because Babb and Sanders felt threatened by defendant, their attention was piqued.  Third, Babb's and Sanders's initial descriptions of defendant accurately described his appearance and clothing, which he wore when he was detained.  Fourth, Babb and Sanders immediately recognized defendant in the squad car and there is no evidence on the record that they expressed uncertainty.  Finally, because the police responded to the report of the assault, detained defendant, and executed the on-scene identification within minutes, the length of time between the crime and the confrontation was minimal.  Under these circumstances, Babb's and Sanders's on-scene identifications of defendant did not violate defendant's right to due process of law.

*Mathis,* Slip. Op. at * 4 (internal citations omitted).

Because the on-scene identification was not unduly suggestive, the

Michigan Court of Appeals held that counsel was not ineffective for failing to

move for suppression of the identifications. *Id.*

Due process protects the accused against the introduction of evidence

which results from an unreliable identification obtained through unnecessarily

suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  To

determine whether an identification procedure violates due process, courts look

first to whether the procedure was impermissibly suggestive; if so, courts then

determine whether, under the totality of circumstances, the suggestiveness has

led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*,

971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing *Neil v. Biggers*, 409 U.S.

188 (1972)).  Five factors should be considered in determining the reliability of

identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.
>
> *Neil v. Biggers,* 409 U.S. at 199-200.

A criminal defendant has the initial burden of proving that the identification

procedure was impermissibly suggestive.  It is only after a defendant meets this

burden of proof that the burden then shifts to the prosecutor to prove that the

identification was reliable independent of the suggestive identification procedure.

*See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004)(citing

*English v. Cody,* 241 F. 3d 1279, 1282-83 (10th Cir. 2001)(citing *United States v.*

*Wade*, 388 U.S. 218, 240, n. 31 (1967)).  If a defendant fails to show that the

identification procedures were impermissibly suggestive, or if the totality of the

circumstances indicate that the identification is otherwise reliable, no due

process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson,* 344 F. Supp. 2d at 1090.

A number of courts have held that prompt, on-scene show-ups of suspects to witnesses are not impermissible or unduly suggestive. Prompt on-the-scene confrontation is actually consistent with good police work and does not offend the principles established in *United States v. Wade*. *See Valtin v. Hollins,* 248 F. Supp. 2d 311, 318 (S.D.N.Y. 2003)(*quoting United States ex rel. Cummings v. Zelker*, 455 F. 2d 714, 716 (2nd Cir. 1972)). Police officers do not need to limit themselves to police station line-ups when "[a]n opportunity for a quick, on-the-scene identification arises." *United States v. King,* 148 F. 3d 968, 970 (8th Cir. 1998). Such on-scene identifications "are essential to free innocent suspects and to inform the police if further investigation is necessary." *Id.; See also United States ex. rel. Cummings v. Zelker,* 455 F. 2d at 716 ("prompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trial is fresh.'")(*quoting Bates v. United States*, 405 F. 2d 1104, 1106 (D.C. Cir. 1968)); *Johnson v. Dugger,* 817 F. 2d 726, 729 (11th Cir. 1987)(Immediate on-scene confrontations "[a]llow identification before the suspect has altered his appearance and while the

14

witness' memory is fresh, and permit the quick release of innocent persons").
[A]bsent special elements of unfairness, prompt on-the-scene confrontations do
not entail due process violations." *Russell v. United States*, 408 F. 2d 1280,
1284 (D.C. Cir. 1969).  Moreover, handcuffs and police custody are necessary
incidents of an on-the-scene identification that do not render the pre-trial
identification procedure unnecessarily suggestive. *See United States v. King,*
148 F. 3d at 970; *Tobias v. Portuondo,* 367 F. Supp. 2d 384, 392 (W.D.N.Y.
2004).  The Sixth Circuit, without extended discussion, has held that bringing
crime victims immediately to the scene of the crime to identify a defendant is not
impermissible or a violation of due process. *See Bruner v. Perini,* 875 F. 2d 531,
534-35 (6th Cir. 1989); *Stidham v. Wingo,* 482 F. 2d 817, 818-19 (6th Cir. 1973).

In the present case, the on-scene identification procedure was not
improper.  Petitioner was arrested a short distance away from the crime scene
within minutes of the assault.   Babb testified that the area where the assaults
took place was well-lit.  Babb and Sanders observed petitioner on two separate
occasions on the night in question.  Because the gas station was well-lit, Babb
and Sanders were able to see petitioner's face clearly when he passed Babb's
car.  Both witnesses had their attention drawn to petitioner on his first trip to the
gas station because of his verbal confrontation with the man selling compact
discs.  On petitioner's second trip, petitioner approached Babb's car, held the
gun three inches from Babb's head, and demanded money.   Babb's and

15

Sanders's initial descriptions of petitioner accurately described his appearance and clothing at the time of his arrest moments later. Babb and Sanders immediately recognized petitioner in the police car, without any uncertainty or hesitation. Finally, because the police responded to the report of the assault, detained petitioner, and executed the on-scene identification within minutes, the length of time between the crime and the on-scene confrontation was minimal. Lastly, Babbs and Sanders remained certain of their identification of petitioner being their assailant at trial.

In this case, the victims' in-court identification of petitioner as their assailant was sufficiently reliable to be admissible, notwithstanding the on-scene show-up procedure that was conducted, where the victims had close, face-to-face encounters with petitioner which lasted a few minutes, the victims gave reasonably accurate descriptions of the perpetrator to the police, the victims showed no uncertainty in identifying petitioner, and the show-up took place within several minutes of the assaults. *See Bruner v. Perini,* 875 F. 2d at 535 (Robbery victim's in-court identification of defendant as robber was sufficiently reliable to be admissible, notwithstanding police officers' exhibition of defendant to victim shortly after robbery, where victim had close, face-to-face encounter with robber, her attention was focused, she gave reasonably accurate description of robber to police, she showed no uncertainty in making the identification after the robbery, and the identification took place only about 30

16

minutes after the robbery).

Finally, in addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 848 (E.D. Mich. 2001)(internal citations omitted).  Deputy Phillip Migliaccio testified that a gas station attendant informed him that a black male with a bald head, white t-shirt and black gun ran east down Beresford Street after the assault.  Deputy Migliaccio headed down Beresford Street and located petitioner, who was wearing a white t-shirt standing on a nearby corner.  Three days later, a gun was discovered on Beresford Street about one block from where the assaults took place.  Given all of the evidence against petitioner, namely, the fact that he was caught by the police near the crime scene soon after the assault while wearing the same clothing as Babb's and Sander's assailant, any error in the admission of Babb's and Sander's allegedly unreliable identification testimony was harmless error at best. *See Solomon v. Curtis,* 21 Fed. Appx. 360, 363 (6th Cir. 2001)

A trial counsel's failure to move to suppress an allegedly unreliable in-court identification is not ineffective assistance, absent a reasonable probability that the suppression motion would have resulted in a decision to

17

exclude the testimony. *See Millender v. Adams,* 187 F. Supp. 2d 852, 868 (E.D. Mich. 2002).  In light of the fact that this Court has determined that the identification testimony in this case was admissible, petitioner has failed to show that counsel was ineffective for failing to object to the on-scene identification procedure. *Bruner v. Perini,* 875 F. 2d at 535.  Petitioner is not entitled to habeas relief on his first ineffective assistance of trial counsel claim.

Petitioner next contends that counsel was ineffective for failing to object to the abandoned handgun which was found three days after the crime. Respondent contends that this claim was never fairly presented to the state courts, because petitioner failed to include this claim in the statements of questions contained in his Rule 11 supplemental brief.

M.C.R. 7.212(C)(5) requires a statement of the questions involved, with each issue for appeal separately numbered. *See Dando v. Yukins,* 461 F. 3d 791, 797 (6th Cir. 2006).  By failing to include this particular ineffective assistance of counsel claim in the headings in his supplemental brief, petitioner did not fairly present this ineffective assistance of counsel claim to the state courts for purposes of properly exhausting this claim. *Wagner v. Smith*, 581 F.3d 410, 415-16 (6th Cir. 2009).  However, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  A habeas petitioner's failure to exhaust his or her state court

18

remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c).  Because petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

The Michigan Court of Appeals concluded that any objection by counsel to the admission of this gun would have been futile, because this evidence was relevant, in that "[T]he recovery of an abandoned gun in the neighborhood of the assault several days after the crime made the charges against defendant more likely." *Mathis,* Slip. Op. at * 4-5.

It is well-settled "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  Because the Michigan Court of Appeals determined that this abandoned gun was relevant and admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v.*

*Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003). The Michigan Court of Appeals determined that the evidence was relevant and admissible under Michigan law. The failure to object to relevant and admissible evidence in not ineffective assistance of counsel. *See Alder v. Burt,* 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003). Therefore, petitioner is not entitled to habeas relief on his claim.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Jurists of reason would not find this Court's resolution of petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal in forma pauperis.

Dated:  January 21, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 21, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---